Filed 10/7/24  P. v. Wright CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JERRY WRIGHT,<br><br>     Defendant and Appellant. | B325427<br><br>(Los Angeles County<br>Super. Ct. No. MA080473-02) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert G. Chu, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Jerry Wright appeals from his judgment of conviction of one count of conspiracy to furnish a controlled substance to a prisoner. (Pen. Code[1] §§ 182, subd. (a)(1), 4573.9.) Wright contends that (1) the evidence was insufficient to support his conviction, (2) the trial court erred in admitting evidence of his alleged coconspirator's gang membership, and (3) the trial court abused its discretion in denying his motion to strike a prior conviction allegation under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). We conclude there was substantial evidence to support Wright's conviction based on the conduct, relationship, and interests of the alleged conspirators. We also conclude the trial court did not err in admitting the challenged gang evidence because it was relevant to the charged offense and was not unduly prejudicial. In addition, we conclude the trial court did not abuse its discretion in denying the *Romero* motion because we presume the court considered the relevant factors, and Wright has failed to show that its sentencing decision was irrational or arbitrary. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Prosecution's case-in-chief

#### A. August 13, 2020 attempted hospital visit

Wright was an inmate at the California State Prison, Los Angeles County. On the night of August 13, 2020, Wright arrived at the prison's treatment triage area after complaining of severe chest pain. The doctor who examined Wright decided that he should be sent to the hospital on an emergency basis. An

---

[1] Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

2

ambulance arrived at 10:00 p.m. to transport Wright to Antelope Valley Hospital. However, when Wright was told he would be quarantined for two weeks upon returning to the prison, he refused to go to the hospital. Wright returned to his cell a few minutes later.

Carl Lamont Jones (Lamont) was an inmate at the same prison as Wright. On the night of August 13, 2020, Lamont's son, Carl LaMarquis Jones (LaMarquis), went to the emergency room at Antelope Valley Hospital, and checked in under a false name. Security footage from the hospital showed that LaMarquis arrived with Lamont's wife, but they did not speak to one another and sat in different areas of the waiting room. Lamont's cousin was also in the waiting room, and handed LaMarquis a cell phone without speaking to him. At that time, Lamont had access to a contraband cell phone inside the prison.

At one point, LaMarquis walked toward the patient treatment area of the emergency room where there were no security cameras. He was wearing a fanny pack that was large enough to hold several small packages. A short time later, LaMarquis returned to the waiting room, but was no longer wearing the fanny pack. At 10:04 p.m., which was a few minutes after Wright refused to go to the hospital, LaMarquis appeared to check a text message on his cell phone. After reviewing the message, LaMarquis quickly walked back toward the patient treatment area, and then left the hospital.

### B. August 15, 2020 hospital visit

On the night of August 15, 2020, while in his prison cell, Wright again complained that he was having chest pain and difficulty breathing. After Wright was taken to the prison's treatment triage center, the medical staff there determined that

he should be transported to the hospital. Under prison rules, Wright was required to change into a translucent paper jumpsuit that he wore over a white t-shirt and white boxer shorts. Correctional Officer Daniel Ramirez prepared Wright for transport, and then accompanied him to Antelope Valley Hospital in an ambulance.

After Wright arrived at the hospital's emergency room, he was assigned to a bed in the patient treatment area that was near a restroom. Wright repeatedly told Officer Ramirez that he needed to use the restroom. Officer Ramirez said that he could get a urinal for Wright, but otherwise they would have to wait for the nurse. Wright insisted, however, that he needed to have a bowel movement and could not wait.

Following prison procedure, Officer Ramirez conducted a search of the restroom for contraband before allowing Wright to enter it. Officer Ramirez found two packages along the side of the toilet, and another two packages under the sink. The packages were wrapped in a large amount of white tape. Officer Ramirez testified that there was enough white tape to wrap around a person's leg, which would have allowed Wright to conceal each package underneath his white clothes. The packages contained cell phones and chargers, earbuds, methamphetamine, marijuana, and tetrahydrocannabinol (THC) wax.

In Wright's presence, Officer Ramirez removed the packages from the restroom and placed them in a lockbox. He then allowed Wright to go inside. In response, Wright indicated that he no longer needed to use the restroom. Wright also stated that he did not want to talk to the officer anymore. Wright did not ask to use the restroom in the hospital again.

4

That night, LaMarquis again visited the emergency room at Antelope Valley Hospital, and checked in under the same false name he previously used. There were two restrooms in the waiting area. Security footage showed that, at about 10:40 p.m., LaMarquis walked past those restrooms and into the treatment area of the emergency room where Wright was located.

While Officer Ramirez was waiting with Wright in the treatment area, he saw a man whom he later identified as LaMarquis enter the restroom where the contraband had been found. LaMarquis exited the restroom less than 30 seconds later. He avoided eye contact with Officer Ramirez as he quickly walked away, but he did look at Wright. Due to the COVID-19 protocols in effect at the time, visitors typically required an escort when they entered the treatment area. LaMarquis, however, did not have an escort. LaMarquis left the hospital shortly after midnight without receiving treatment.

A few hours after Wright arrived at the hospital, he was medically cleared to return to the prison. Other than testing, Wright received no medical treatment that night. Between 2017 and 2020, Wright was transported to a hospital on seven different occasions due to a reported medical issue. Each visit was short in duration and occurred around the same time at night when less staff were present at the prison. Wright did not visit the hospital after August 15, 2020.

## II. Defense evidence

Wright testified on his own behalf. According to Wright, prior to August 2020, he had a history of heart problems that required him to visit the hospital on occasion. On August 13, 2020, Wright felt extreme pain on the left side of his chest. At the prison's triage area, the medical staff performed an EKG test

5

and decided that Wright needed to go to the hospital. However, after the staff gave him "nitro" pills, Wright did not need further treatment because his pain went away. On August 15, 2020, Wright again had severe pain, and had to go to the hospital because the treatment at the prison did not help. While at the hospital, Wright told the officer that he needed to use the restroom to have a bowel movement, but then the urge passed. Once Wright received some testing and treatment, he returned to the prison.

Wright denied he was aware of the contraband that was found in the hospital restroom. He also denied he knew LaMarquis or had any contact with him. Wright admitted he knew Lamont because they were housed in the same prison unit, but he claimed they never talked after the charges were filed in this case. Wright further admitted he used to be a member of the Crips gang, but denied current membership. Wright testified he did not know whether Lamont was a Crips gang member.

### III. Prosecution's rebuttal evidence

The prosecution called California State Prison Correctional Sergeant Luis Vaca as a rebuttal witness. Seargent Vaca previously worked as a gang investigator at the prison, and opined that Lamont was a member of the Crips gang. He based his opinion on Lamont's gang tattoos, a photo of Lamont making gang signs, and an audio clip of Lamont making a gang reference.

### IV. Jury verdict and sentencing

At the conclusion of the trial, the jury found Wright guilty as charged of one count of conspiracy to furnish a controlled substance to a prisoner (§§ 182, subd. (a)(1), 4573.9). In a bifurcated proceeding, Wright admitted he had a prior conviction

for murder within the meaning of the "Three Strikes" law (§§ 667, subd. (d), 1170.12, subd. (b).)

At sentencing, the trial court denied Wright's motion to strike the prior conviction allegation. The court sentenced Wright to the middle term of four years, doubled to eight years under the Three Strikes law.

Wright filed a timely appeal.

## DISCUSSION

### I. Sufficiency of evidence supporting conviction

On appeal, Wright challenges the sufficiency of the evidence supporting his conviction for conspiracy to furnish a controlled substance to a prisoner. Wright claims there was no evidence that he entered into an agreement to sell, or to assist anyone else in selling, drugs to other inmates. We conclude substantial evidence supported Wright's conviction.

#### A. Governing law

Section 4573.9 makes it a felony for any person, other than a person held in custody, to sell, furnish, administer, or give away a prohibited controlled substance to a prisoner. (§ *Id.*, subd. (a).) While a prison inmate cannot be convicted of the substantive offense proscribed by section 4573.9, he or she can be convicted of conspiracy to violate that statute if the elements of conspiracy are proven. (*People v. Lee* (2006) 136 Cal.App.4th 522, 538.)

" ' "Conspiracy requires two or more persons agreeing to commit a crime, along with the commission of an overt act, by at least one of these parties, in furtherance of the conspiracy." ' " (*People v. Dalton* (2019) 7 Cal.5th 166, 244; see § 182, subd. (a)(1).) "This crime has four elements: (1) the existence of an agreement between at least two persons; (2) the specific intent to agree to commit an offense; (3) the specific intent to commit the

offense that is the object of the agreement; and (4) an overt act in furtherance of the conspiracy, which may be committed by any conspirator." (*People v. Ware* (2022) 14 Cal.5th 151, 163.)

As our Supreme Court has explained, "[e]vidence of an agreement does not require proof that the parties met and expressly agreed; a criminal conspiracy can be shown through circumstantial evidence. [Citation.] 'Evidence is sufficient to prove a conspiracy . . . "if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy." ' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 145.)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Morales* (2020) 10 Cal.5th 76, 88.) We " 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.' " (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) Our "task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ' " 'be reasonably reconciled with the defendant's innocence.' " ' [Citations.] The relevant inquiry is whether, in light of all the evidence, a reasonable [jury] could have found the defendant guilty beyond a reasonable doubt." (*People v. Gomez* (2018) 6 Cal.5th 243, 278.) " 'The standard of review is the same

8

in cases in which the prosecution relies mainly on circumstantial evidence.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 324.)

**B.** **Substantial evidence supported the conviction for conspiracy to violate section 4573.9**

Viewing the evidence in the light most favorable to the jury's verdict, there was substantial evidence to support Wright's conviction for conspiracy to furnish a controlled substance to a fellow prisoner. The evidence at trial showed that Wright and Lamont were housed in the same prison unit, and that Wright either visited, or attempted to visit, Antelope Valley Hospital on August 13 and 15, 2020. On August 13, Wright decided that he no longer wanted to go to the hospital upon learning he would be quarantined for two weeks once he returned. On August 15, after arriving at the hospital's emergency room, Wright repeatedly asked to use the restroom in the patient treatment area, but changed his mind right after Officer Ramirez searched the restroom and found drugs and other contraband. A few hours later, Wright was medically cleared to return to the prison without receiving treatment.

The evidence further showed that Lamont's adult son, LaMarquis, went to the same hospital on the same two dates. Each time, LaMarquis checked into the emergency room under a false name and entered the patient treatment area. On August 13, after LaMarquis returned from the treatment area, Lamont's cousin handed him a cell phone without speaking to him. At that time, Lamont also had possession of a contraband cell phone in prison. Within minutes of Wright refusing to go to the hospital and returning to his cell, LaMarquis appeared to review a text message on his phone. He then headed back toward the restroom where the contraband would be discovered two days later.

9

On August 15, after confiscating the contraband, Officer Ramirez saw LaMarquis enter that same restroom, and then quickly leave while avoiding eye contact with the officer. On both occasions, LaMarquis left the hospital without receiving treatment.

Based on the totality of this evidence, the jury reasonably could find that Wright, Lamont, and LaMarquis entered into an agreement to sell controlled substances and other contraband inside the prison. Under this scheme, LaMarquis would furnish the drugs to Wright, who would retrieve them from the hospital restroom and transport them to the prison, where he and/or Lamont would sell them to inmates. The jury reasonably could infer that the three men originally intended to carry out the crime on August 13, 2020, but changed their plan when Wright decided that he did not want to be placed in quarantine upon his return to the prison. As soon as LaMarquis learned from a text message that Wright would not be going to the hospital that night after all, he immediately went to retrieve the contraband that he left in the restroom a short time earlier. The jury also reasonably could infer that the men made a second attempt to execute their scheme on August 15, 2020, but Officer Ramirez found the contraband that LaMarquis hid in the restroom before Wright had a chance to retrieve it.

On appeal, Wright asserts that, even though he knew Lamont from prison, the evidence was insufficient to establish that he knew LaMarquis or entered into an agreement with either of the men to sell or transport drugs. We disagree. While there may not have been any direct evidence of a prior agreement between Wright, Lamont, and LaMarquis, such evidence was not required. "Given the nature of criminal conspiracies, it is often the case that there is no direct evidence of an agreement among

10

the conspirators." (*People v. Navarro, supra*, 12 Cal.5th at p. 305.) However, "direct evidence is unnecessary when, as here, the circumstantial evidence permits the jury to infer beyond a reasonable doubt that an agreement existed." (*Ibid*.)

In this case, there was strong circumstantial evidence that Wright agreed to retrieve the drugs that LaMarquis stashed in the restroom and to bring them to the prison to be sold to other inmates. Contrary to Wright's contention, the evidence did not merely show his presence as a patient in the hospital at the same time LaMarquis happened to be there. Rather, the conduct of both men was consistent with that of conspirators who were each feigning a medical emergency to gain access to a location in the hospital where drugs were later found. The jury reasonably could infer from such conduct, as well as Wright's and LaMarquis's connection to Lamont, that the three men conspired to transport and sell those drugs inside the prison. On this record, Wright's conviction for conspiracy was supported by substantial evidence.

## II. Admission of gang evidence

Wright argues the trial court abused its discretion when it allowed rebuttal testimony that Lamont was a member of the Crips gang. Wright also asserts the error in admitting the evidence deprived him of his constitutional right to due process and a fair trial. We conclude the trial court did not abuse its discretion or violate due process in admitting the evidence.

### A. Relevant background

Wright, Lamont, and LaMarquis were originally tried together, but both Lamont and LaMarquis later entered into pleas. Prior to the start of trial, LaMarquis's counsel argued that the prosecution should not be allowed to introduce evidence of each defendant's gang affiliation. The prosecution responded

11

that evidence showing all three defendants belonged to the same gang was relevant to prove that they knew each other. The trial court tentatively ruled that such evidence was admissible.

During his trial testimony, Wright admitted he knew Lamont, but denied he knew LaMarquis. Wright also admitted he used to be a member of the Crips gang, but testified he did not know if Lamont was a member of that gang. Following Wright's testimony, the prosecution sought to call a rebuttal witness who would testify that Lamont was a Crips gang member. Over a defense objection, the trial court allowed the rebuttal evidence, reasoning: "This is a case where the defendant got up on the stand and said that he did not know Carl Lamont Jones. And so now it is the People's burden to prove that there was some type of knowledge or some type of relationship there where they knew each other to impeach [the] defendant's testimony."

### B. Governing law

The rules governing the admissibility of evidence are well-established. Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence is relevant when it " ' "tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive." ' " (*People v. Young* (2019) 7 Cal.5th 905, 931.) The trial court, however, may exclude relevant evidence if "its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Evidence is unduly prejudicial if it " 'uniquely tends to evoke an emotional bias

12

against the defendant as an individual,' " while having only slight probative value with regard to the issues. (*People v. Miles* (2020) 9 Cal.5th 513, 587.)

The prosecution generally is entitled to introduce gang-related evidence if it is relevant to the charged crimes. (*People v. Chhoun* (2021) 11 Cal.5th 1, 31.) Our Supreme Court has recognized that " 'evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1095.) "Such evidence is admissible even when a gang enhancement is not charged, provided the probative value of the evidence is not substantially outweighed by its prejudicial effect." (*Ibid*.)

We review a trial court's ruling allowing the presentation of gang evidence for abuse of discretion. (*People v. Pineda* (2022) 13 Cal.5th 186, 235; *People v. Chhoun, supra,* 11 Cal.5th at p. 31.) The trial court's evidentiary ruling " ' " 'will not be disturbed . . . unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Chhoun*, at p. 26.)

### C. The trial court did not err in admitting the evidence of Lamont's gang membership

Wright contends the trial court erred in allowing the prosecution's rebuttal witness to testify about Lamont's gang membership because such evidence was not relevant to any disputed issue. However, the evidence that Lamont was a

member of the same gang as Wright was probative of the existence of conspiracy. As discussed, the existence of a conspiracy may be inferred from, among other factors, the relationship of the alleged conspirators. (*People v. Penunuri*, *supra*, 5 Cal.5th at p. 145.) Although proof of common gang membership "alone is not sufficient to establish participation in a criminal conspiracy," it ' "may be part of circumstantial evidence supporting the inference of a conspiracy.' " (*People v. Ware*, *supra*, 14 Cal.5th at p. 168.) Here, the evidence that Lamont and Wright belonged to the same gang supported such an inference because it tended to explain why Wright would agree to work with Lamont and his son to bring drugs into the prison.

Wright argues the admission of the evidence was nevertheless erroneous because the trial court incorrectly ruled that it could be used to impeach Wright's testimony that he did not know Lamont. The record reflects that, at various points in Wright's testimony, there was some confusion over which "Carl Jones" was being referenced because both the father and son shared the same first and last name. Although Wright initially denied knowing "someone named Carl Lamont Jones," he then clarified that he did know an inmate by that name. Thus, the trial court was mistaken when it stated that Wright testified that he did not know Lamont. However, "[i]f a judgment rests on admissible evidence it will not be reversed because the trial court admitted that evidence upon a different theory, [or] a mistaken theory . . . ." (*People v. Brown* (2004) 33 Cal.4th 892, 901.) "[W]e review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Camacho* (2022) 14 Cal.5th 77, 123.) While Wright admitted he knew Lamont because they were housed in the same yard and

14

building, he denied knowing whether Lamont was a Crips gang member. Under these circumstances, the evidence that Wright and Lamont were members of the same gang was relevant to showing there was a relationship between the two men beyond their placement in the same prison unit.

The trial court also reasonably could conclude that the probative value of the evidence was not substantially outweighed by its potential for prejudice. Because evidence of a defendant's gang membership " ' "creates a risk the jury will improperly infer the defendant has a criminal disposition," ' " a trial court should carefully scrutinize such evidence before admitting it. (*People v. Chhoun*, *supra*, 11 Cal.5th at p. 31.) But in this case, Wright himself testified that he used to be a Crips gang member. The prosecution's rebuttal witness, Sergeant Vaca, did not offer any testimony about Wright's gang affiliation, but rather opined solely about Lamont's membership in a gang. The proffered testimony was also relatively brief and narrow in scope. It was limited to establishing that Lamont was a member of the Crips gang, which could support the inference that he and Wright had a relationship prior to entering into the conspiracy. On this record, the trial court's decision to allow such evidence did not exceed the bounds of reason. (*Id*. at p. 33.)

We likewise reject Wright's claim that the admission of the evidence violated his constitutional right to due process and a fair trial. The " 'application of the ordinary rules of evidence generally does not impermissibly infringe on a [defendant's] constitutional rights.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.) " 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' " (*People v. Jones* (2013)

15

57 Cal.4th 899, 949.) In this case, the trial court reasonably could conclude that the proffered gang evidence was relevant to the charged offense and was not unduly prejudicial. Wright accordingly has failed to show an abuse of discretion or violation of due process in the admission of such evidence.

## III. Denial of motion to strike prior conviction

Wright claims the trial court abused its discretion when it denied his motion to strike his prior conviction for murder under *Romero*, *supra*, 13 Cal.4th 497. We conclude the trial court acted within its broad discretion in denying the *Romero* motion.

### A. Governing law

Under section 1385, subdivision (a), a trial court has the discretion to dismiss or strike a prior conviction for a serious or violent felony offense in furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at p. 530.) In determining whether to strike a prior conviction, the trial court " 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Johnson* (2015) 61 Cal.4th 674, 689.)

We review a trial court's refusal to strike a prior conviction allegation for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) Because the Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper[,] [¶] . . . a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Id.* at

16

p. 378.) Such circumstances include where the trial court was unaware of its sentencing discretion, considered impermissible factors, or imposed a Three Strikes sentence that produced an arbitrary, capricious, or patently absurd result. (*Ibid.*) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* pp. 376–377.)

### B. The trial court did not abuse its discretion in declining to strike Wright's prior conviction

At Wright's sentencing, defense counsel asked the trial court to strike Wright's 1983 conviction for murder. Defense counsel noted that the conviction was "39 years in the past," and that "there's nothing to indicate that [Wright had] been a problem prisoner." In response, the trial court stated that it "reviewed the court file, defendant's probation report, his criminal history, [and] argument from both counsel." In declining to strike the prior conviction allegation, the court explained: "Regarding defendant's prior strike, the touchstone of the analysis must be whether looking at the defendant and his history as a whole, taking into account the nature of the present case, its background and character, the defendant may be deemed outside the scheme of the spirit [*sic*] and should, therefore, be treated as though he had not previously been convicted of a prior strike. [¶] Based on all the information that has been provided to the court, and based on the reasoning the court has just stated, the court is not satisfied in how dismissing

17

the defendant's prior strike allegation would be in the interest of justice."

On appeal, Wright argues the trial court erred in denying his *Romero* motion because the court did not expressly consider the remoteness of the prior conviction or Wright's age when he committed the offense. Although the trial court did not specify its reasons for declining to strike the prior conviction allegation, it was not required to do so. (*In re Large* (2007) 41 Cal.4th 538, 550 ["While a court must explain its reasons for striking a prior . . . , no similar requirement applies when a court declines to strike a prior"].) Moreover, as this court has observed, "[w]e presume the trial court has considered all relevant factors in the absence of an affirmative record to the contrary. When the record is silent as to the trial court's reasons for declining to strike a prior strike, we presume the court correctly applied the law. Only in an extraordinary case—where the relevant factors manifestly support the striking of a prior conviction and no reasonable minds could differ—would the failure to strike be an abuse of discretion." (*People v. Edwards* (2022) 76 Cal.App.5th 523, 529; see *People v. Brugman* (2021) 62 Cal.App.5th 608.)

Here, the trial court set forth the correct legal standard for ruling on a *Romero* motion, and explained that it considered the court file, Wright's probation report, his criminal history, and the argument of counsel. The court stated that, based on all of the information that was provided, it did not believe that striking the prior conviction allegation would be in the interest of justice. In sentencing Wright, the court selected the middle term of four years, doubled to eight years under the Three Strikes law. There is nothing in the record to suggest that the court was unaware of its discretion, considered any impermissible factors, or imposed

18

an arbitrary, capricious, or patently absurd sentence.  On this record, Wright has failed to meet his burden of demonstrating that the trial court's sentencing decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

## DISPOSITION

The judgment is affirmed.


VIRAMONTES, J.


WE CONCUR:


GRIMES, Acting P. J.


WILEY, J.